UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JEFFERY COOPER,

               Petitioner,

   v.

NETHANJAH BREITENBACH,

               Respondents.

Case No. 3:23-cv-00067-MMD-CSD

ORDER

## I.    SUMMARY

This is a 28 U.S.C. § 2254 habeas corpus action brought by pro se Petitioner Jeffery Cooper, a Nevada prisoner. The matter is before the Court for adjudication on the merits of the remaining claims. Because the Court concludes that the remaining grounds lack merit, the Petition is denied. The Court also denies a Certificate of Appealability.

## II.   BACKGROUND

### A.    State-Court Proceedings

A Las Vegas (Clark County) jury convicted Cooper of attempted murder with use of a deadly weapon and battery with use of a deadly weapon. (ECF No. 28-17.) The charges stemmed from an incident where DeQuandre Williams and Cooper bumped into each other as they were walking in the crowd on the Las Vegas Strip. They exchanged angry words; Cooper reached into his backpack, pulled the trigger of a gun that was in the backpack, and shot Williams. In August 2017, the state district court sentenced Cooper to 96 to 240 months, with a consecutive term of 48 to 120 months for the deadly weapon enhancement. (ECF No. 28-22.)

Cooper appealed, and the Nevada Court of Appeals affirmed his convictions. (ECF No. 28-41.) The Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in January 2023. (ECF No. 30-32.)

**B.      Federal Habeas Proceedings**

In February 2023, Cooper dispatched his pro se federal habeas petition for mailing. (ECF No. 1-1.) The Court granted Respondents' Motion to Dismiss in part. (ECF Nos. 27, 42.) The following grounds for relief remain for the Court's consideration:

Ground 1: Trial counsel ineffectively failed to investigate and present a mens rea defense.

Ground 2: Trial counsel failed to provide more mitigating evidence at sentencing.

Ground 3: Trial counsel failed to object to prosecutorial misconduct during closing arguments.[1]

Ground 4: Appellate counsel failed to "raise preserved errors."

Ground 5: The cumulative effect of counsel's errors deprived Cooper of effective assistance of counsel.

(ECF No. 13.)

Respondents have answered the remaining claims (ECF No. 51); Cooper did not file a reply.

## III.      TRIAL TESTIMONY[2]

DeQuandre Williams and his girlfriend Eunique Boyd were walking the Las Vegas strip with visiting family about 1:30 a.m. on August 28, 2016. (ECF No. 28-12 at 12-50.) An old friend called out to Williams; he started walking toward the friend. Cooper bumped into Williams. He "shoulder-checked" Williams, which Williams said was understood to signal that you had a problem with the person. (*Id*. at 14.) Cooper had a "bullring" nose piercing and a neck tattoo. (*Id*. at  43, 47.) They exchanged angry words, asking each

---

[1]Cooper repeats this claim as ground 7, so the Court will address the two claims together.

[2]This Court makes no credibility or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the Petition.

other "you got a problem?" (*Id.* at 15.)[3] Cooper slid his backpack off and was holding it in front of him. He shot through his backpack, hitting Williams in the thigh and grazing his stomach. Video surveillance showed the men exchanging words, Cooper taking his backpack off, and a flash.

Las Vegas Metropolitan Police Department ("LVMPD") patrol officer Nathan Rivera responded to the scene. (ECF No. 28-14 at 71-89.)  About a minute earlier he had noticed a man with an "N" neck tattoo who seemed to be going around looking for a fight. (*Id.* at 72.) Officer Jeffrey Clark obtained surveillance video showing the altercation. (*Id.* at 37-70.) Video showed the shooting by a man in a black hat, glasses, and purple hoodie carrying a backpack. The shooter ran away through a casino and got into a red Chevy. Clark was able to make out the license plate and radioed the plate number and a description of the vehicle to dispatch.

LVMPD officer Eduardo Parayno went to the car's registered address. (ECF No. 28-14 at 18-37.) He saw the car parked there, unoccupied. A female and two males came out of the apartment, got in the car, and drove away. Parayno followed them to the entrance to the apartments where another team of officers stopped the car. Officer Jeffrey Kinsler was part of the team that stopped the Chevy. (ECF No. 28-14 at 105-184.) Officers took the occupants into custody. The driver had an "N" neck tattoo and was wearing a hat that looked like it bore the same logo or design as the one seen in surveillance video. When officers searched the apartment, they found a backpack with holes in the bottom as if something had been fired through it. It had a picture of an emoji on it that appeared to match the surveillance images. (*Id.* at 118.) A plane ticket in the name of Jeffery Cooper was inside the backpack. They recovered a gun from under a bed and found eyeglasses and a purple hooded sweatshirt. (*Id.* at 120-22.) Police were unable to determine whether the gun they found was the gun used in the shooting. At trial, Cooper was asked to turn toward the jury so that they could see his "N" neck tattoo.

---

[3]*See also* testimony of Eunique Boyd, ECF No. 28-12 at 51-70; testimony of David Hernandez, ECF No. 28-14 at 5-18.

## IV.   STANDARDS OF REVIEW

### A.   AEDPA

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation modified). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for

relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (citation modified)).

### B.      Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that counsel's "representation fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

In reviewing a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply, so review is doubly deferential. *See Richter*, 562 U.S. at 104-05. Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

### V.      DISCUSSION

### A.      Ground 1—Mens Rea Defense

Cooper alleges that his trial counsel ineffectively failed to assert a mens rea defense against attempted murder and battery and failed to request a supporting jury instruction. (ECF No. 13 at 9-15.) He further argues that counsel failed to obtain an expert to evaluate his post-traumatic stress syndrome ("PTSD"), refused to allow Cooper to testify and that ultimately there was a breakdown in attorney-client communication. (*Id*. at 10-13.)

Attempted murder in Nevada requires a specific intent to kill. *Sharma v. State*, 56 P.3d 868, 874-75 (Nev. 2002). Intent is usually "inferred by the jury from the individualized, external circumstances of the crime," such as "the intentional use of a deadly weapon upon the person of another at a vital part." *Id*., quoting *Dearman v. State*, 566 P.2d 407, 409 (Nev. 1977); *see also Cooper v. State*, 587 P.2d 1318, 1319 (Nev. 1978) (in a prosecution for attempted murder, a jury was free to draw reasonable inferences of specific intent from the facts proved at trial, including the appellant's overt act of twice turning and firing gunshots in the direction of the victim, who was pursuing the appellant). Nevada law does not recognize a technical diminished capacity defense. *Crawford v. State*, 121 P.3d 582, 591 (Nev. 2005).

At Cooper's state postconviction evidentiary hearing, Dr. Brian Leany testified that he had administered cognitive tests to Cooper in connection with the state habeas proceedings. (ECF No. 29-44 at 5-30.) Cooper exhibited symptoms of PTSD, reported physical and sexual abuse as a child, and said that he had witnessed gang violence on numerous occasions. He was also shot in a gang-related incident. Leany said he saw signs of dissociation and hypervigilance in Cooper.

Cooper testified at the evidentiary hearing that he had been shot when he was about 14 years old. (ECF No. 29-44 at 31-78.) He has been shot at several times since and has witnessed several people get shot; some died. Earlier on the day that Williams was shot Cooper had seen a group of people with whom he had had previous "run ins." (*Id*. at 44.) Cooper was smoking marijuana and had used other drugs that day. Williams bumped into him hard, and Cooper thought Williams was acting aggressively toward him.

They exchanged angry words; Williams had his hands balled into fists by his waist. Cooper testified that Williams said," I'll smoke you," and grabbed something black and silver. (*Id*. at 53.) Cooper thought it was a gun, but it turned out to be a hair pick. Cooper had wanted to testify at trial in order to explain the misunderstanding and that he never intended to shoot anyone.

Cooper said that after he disagreed with his defense attorney about a mistaken-identity defense, his counsel stopped visiting and sent an assistant instead. His lawyer wouldn't take calls from Cooper or his family, and he did not always respond to emails from Cooper's mother. On cross-examination Cooper acknowledged that he knew that he had the right to testify and that the trial court had also informed him of that right. Cooper said that his trial counsel told him that the State had offered a plea deal for 5 to 12 years, but that it was up to the sentencing judge. Cooper said his counsel discouraged him from taking a plea deal because, based on no identification, the "case is in the bag." (*Id*. at 77.) Cooper was recalled after his trial counsel testified. (*Id.* at 30-32.) Cooper said that both he and his mother told defense counsel about Cooper's PTSD prior to trial.

Trial counsel testified that he and his investigator had multiple pre-trial conversations and visits with Cooper. (ECF No. 29-49 at 5-29.) He gave Cooper his discovery. Counsel did not recall what particular plea deals the State offered but said that it was "absolutely" his normal course to relay all offers to his client. (*Id*. at 10.) Counsel thought they had a good defense based on lack of identification because the video of the incident never showed the shooter clearly. (*Id.* at 12.) He said that Cooper is incredibly intelligent and actively participated in his defense. The trial court had carefully kept any gang history out of the trial. Defense counsel advised Cooper not to testify; he didn't want the jury to view Cooper solely as a gang member with a past, and Cooper had past felonies. (*Id*. at 13.) But both defense counsel and the trial court made it clear to Cooper that it was his decision whether to testify. In a letter to the sentencing court Cooper stated that he had wanted to testify but decided not to because of his criminal history. (ECF No. 21 at 21 ("I understand that [whether to testify] was my final decision to make.").)

7

Cooper's lawyer was aware that there may have been some mental health diagnoses, but he and Cooper never discussed presenting PTSD to the jury as part of their trial strategy. Counsel didn't see how that would boost their defense because there is no diminished capacity defense in Nevada. If the defense presented the theory that Cooper's gang activity caused the PTSD, that would have opened Cooper up to questioning by the prosecution about his involvement in gangs and his past crimes. (ECF No. 29-29 at 15-17.) Counsel noted that this theory that PTSD caused Cooper to act as he did that night was new and not something he had discussed with Cooper. Counsel testified:

> . . . this PTSD notion is very new. This isn't something that Mr. Cooper had said, hey, I got PTSD, man. That's why I did this. Why don't you present that? It was absolutely not that cut and dry. This whole notion that the PTSD was causing his actions is new. It's a new argument. It's not something him and I discussed…. [T]o say that I had an option between the PTSD defense and another defense if not fair to what the facts were at the time.

(*Id.* at 25-26.) Counsel said that the first time Cooper mentioned anything about PTSD was in his state habeas proceedings. Counsel said that he never told Cooper that the case was "in the bag," and had never told any client that there was a guaranteed trial outcome. (*Id*. at 29.) During trial the court informed Cooper that it was his right to elect whether or not to testify. (ECF No. 28-14 at 99-101.) The court canvassed him about whether he understood this right and whether he was aware that if he testified the prosecution would be able to ask him about prior felonies. Cooper indicated that he understood. (*Id.*)

The Nevada Court of Appeals held that Cooper failed to demonstrate that his counsel was deficient or that he was prejudiced:

> First, Cooper claimed that his trial counsel was ineffective for failing to investigate and present a defense to show that Cooper lacked the mens rea for attempted murder or battery due to his post-traumatic stress disorder (PTSD) and other mental health issues. Cooper also asserted that his counsel should have requested jury instructions concerning his mental state and his inability to form the necessary intent to commit the crimes due to his mental state.

8

At the evidentiary hearing for Cooper's petition, counsel testified that he reviewed the evidence and discussed potential defenses with Cooper. Counsel testified that Cooper told him that the incident happened because he believed that the victim was a rival gang member. Counsel testified that he was aware that Cooper had some mental health issues but that Cooper did not say anything that would have caused him to believe that Cooper's mental health issues played a role in the shooting. Counsel was very concerned that Cooper's gang history and criminal record would be presented to the jury, and he wished to avoid any defense that had the potential of placing those issues before the jury. Counsel also stated that he reviewed the video surveillance recordings and believed that it would not be easy for the jury to identify Cooper as the person depicted in those recordings. He therefore concluded that a mistaken-identity defense was the best option Cooper had for a favorable result at trial.

The district court found that counsel's testimony was credible, and substantial evidence supports that decision. In light of the testimony presented at the evidentiary hearing, counsel's investigation and preparation were reasonable under the circumstances of this case. Cooper also failed to demonstrate it was unreasonable for counsel to decline to request instructions concerning his mental issues and those issues' effect on his ability to form the mens rea for attempted murder and battery. Thus, Cooper failed to demonstrate his counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *see also Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) (stating that strategic decisions of counsel are "virtually unchallengeable absent extraordinary circumstances"). Cooper also failed to demonstrate a reasonable probability of a different outcome had counsel performed additional investigation or preparation in this matter or requested different jury instructions. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 30-32 at 3-4.)

During closing arguments, defense counsel emphasized that it was impossible to identify the shooter from the video. He highlighted how eyewitness testimony—including that of at least one police officer—differed notably regarding what the shooter was wearing. (ECF No. 28-14 at 206-220.) Cooper presented some testimony during the postconviction evidentiary hearing that he likely suffered from PTSD. But no evidence persuasively suggested that PTSD was a factor in the shooting, let alone that Cooper lacked the mens rea to commit attempted murder because of his PTSD.

Defense counsel also testified credibly that Cooper knew it was his decision whether to testify. Cooper had explained in a letter he wrote to the sentencing court that he had decided not to testify due to his criminal record. Defense counsel said that Cooper actively participated in his defense. Counsel had explained to his client the potential serious detriment of presenting Cooper as a gang member with a criminal history in an effort to demonstrate that gang-related PTSD caused or heavily influenced Cooper to act.

Cooper has not shown that his counsel unreasonably presented a mistaken-identity defense under these circumstances. So he has not demonstrated deficiency. Nor has Cooper demonstrated a reasonable probability of a different result if counsel had pursued a defense based on PTSD and requested a specific jury instruction. Cooper has not demonstrated that the Nevada Court of Appeals' decision on federal ground 1 was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Habeas relief is therefore denied on ground 1.

### B.      Ground 2—Mitigating Evidence at Sentencing

Cooper contends that trial counsel failed to present mitigation evidence at sentencing, such as his PTSD. (ECF No. 13 at 17-18.)

Defense counsel testified at the state postconviction evidentiary hearing about the memorandum he prepared for sentencing. (ECF No. 29-49 at 17-20.) Counsel stated that he wanted to show the judge another side of Cooper: that he's very intelligent, he had a two-year-old daughter and a fiancé. (*Id.* at 17.) He noted in the memorandum Cooper's self-reported history of mental health problems and substance abuse and that he had been diagnosed with stress disorders and bipolarism. Counsel focused mainly on Cooper's upbringing and family and church support. (ECF No. 28-21.) Counsel included a letter from Cooper's mother. (*Id.* at 10.) The jail chaplain wrote a letter stating that Cooper was actively participating in weekly Bible study, showed real repentance, had an excellent attitude for the future, and was a good example for other inmates. (*Id.* at 8.) Cooper's fiancé stressed in her letter that he was an active and loving father and role

model to her younger brothers. (*Id.* at 11.) Cooper wrote a letter also in which he detailed his tumultuous upbringing, exposure to gang violence, and mental health problems including PTSD and severe depression. (*Id.* at 13-23.)

The Nevada Court of Appeals rejected this claim:

> Second, Cooper claimed that his trial counsel was ineffective for failing to present sufficient mitigation evidence concerning Cooper's mental health issues during the sentencing hearing. At the evidentiary hearing, counsel testified that he was aware of Cooper's PTSD and other mental health issues and that he mentioned those issues in his sentencing memorandum. Counsel, however, decided it was in Cooper's best interests to focus on Cooper's positive side. Counsel therefore focused on Cooper's intelligence, his family life, and involvement in church. The district court found that counsel's testimony was credible and substantial evidence supports that decision. In light of the testimony presented at the evidentiary hearing, counsel's presentation of mitigation information to the sentencing court was reasonable under the circumstances of this case. Thus, Cooper failed to demonstrate his counsel's performance fell below an objective standard of reasonableness. *See Lara*, 120 Nev. at 180, 87 P.3d at 530. Cooper also failed to demonstrate a reasonable probability of a different outcome had counsel presented additional information concerning Cooper's mental health issues to the sentencing court. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 30-2 at 4-5.)

Defense counsel reasonably made the strategic decision to focus on Cooper's strengths and desire for rehabilitation in the sentencing memo. Counsel also informed the court of Cooper's mental health issues, as did Cooper himself. It is unclear that additional information regarding Cooper's mental health was available. Cooper has not shown a reasonable probability of a different result at sentencing had defense counsel focused more on mental health issues. So Cooper has not demonstrated that the Nevada Court of Appeals' decision on federal ground 2 was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). The Court, therefore, denies habeas relief on ground 2.

**C.     Grounds 3 and 7—Failing to Object to Prosecutorial Misconduct**

Cooper asserts that trial counsel failed to object to several instances where the prosecutor made improper comments during closing arguments. (ECF No. 13 at 20-25.) He argues that the prosecutor vouched for the victim and his girlfriend. He repeats the same claim as ground 7. (*Id*. at 29.)

Prosecutorial misconduct may "'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The court reviews under the "narrow" standard of a due process violation, "not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A petitioner cannot prevail on such a claim by merely showing "that the prosecutors' remarks were undesirable or even universally condemned." *Id*. To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765, quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Prosecutorial misconduct which rises to the level of a due process violation may provide the grounds for granting a habeas petition only if that misconduct is deemed prejudicial under the 'harmless error' test." *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004). An error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 623 (1993).

"'Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005), quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). A prosecutor's comment on a defendant's exercise of his right to remain silent is unconstitutional. *United States v. Whitehead*, 200 F.3d 634, 638 (9th 2000).

During closing arguments, the prosecutor commented on the credibility of the victim and his girlfriend:

12

So, while we're talking about DeQuandre and Eunique, let's just talk about them for a quick second. Their credibility and their believability, well, DeQuandre took that stand and he told you all what happened back on August 28, 2016. He told you it was a day that he will never forget for the rest of his life. This was a traumatic experience for DeQuandre. He'd been shot. His girlfriend had to witness him getting shot. What's his motive? What interest does he have in this to come in here and to make up a story about what happened if it wasn't true?

. . . .

So let's talk about the direct evidence. DeQuandre Williams. Well, for the life of me, I can't understand why a 20-year-old man who just got – who suffered two bullet wounds would be willing to come into the court, take the stand, swear an oath, and point at the wrong guy. Why would he do that? We all know – we've all heard and I think even the defense say, they don't know each other. These two men do not know each other. And I think you can tell by Mr. Williams' demeanor, he's not happy about getting shot. He's not looking to pick out the wrong guy and I did the thing lawyers are not supposed to do. I asked him in redirect: Well, how sure are you that it's Mr. Cooper? I didn't know what he was going to say. And he said: I'm certain. I never forget a face and I won't forget that face.

. . . .

I mean, short of [Cooper] confessing, I don't know what else you could have.

(ECF No. 28-14 at 193-194, 224, 227.)

The Nevada Court of Appeals disagreed that counsel was ineffective:

Third, Cooper claimed that his trial counsel was ineffective for failing to object when the State vouched for the credibility of the victim and his girlfriend. "The prosecution may not vouch for a witness; such vouching occurs when the prosecution places the prestige of the government behind the witness by providing personal assurances of [the] witness's veracity." *Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004) (internal quotation marks omitted). However, the State is allowed "reasonable latitude" to argue concerning the credibility of witnesses. *Rowland v. State*, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002). During closing arguments, the State contended that the victim and his girlfriend had no motive to fabricate their version of events and urged the jury to find them credible. The State's arguments did not provide personal assurances of the witnesses' veracity and, therefore, did not constitute improper vouching. Accordingly, Cooper failed to demonstrate his counsel's performance fell below an objective standard of reasonableness by failing to object to the challenged arguments. Cooper also failed to demonstrate a reasonable probability of a

13

different outcome had counsel done so. Therefore, we conclude the district court did not err by denying this claim.

Fourth, Cooper claimed that his trial counsel was ineffective for failing to object to prosecutorial misconduct when the State commented on Cooper's post-arrest silence. "It is well settled that the prosecution is forbidden at trial to comment upon an accused's election to remain silent following his arrest." *Morris v. State*, 112 Nev. 260, 263, 913 P.2d 1264, 1267 (1997) (internal quotation makes omitted). "[T]he prosecutor may . . . assert inferences from the evidence and argue conclusions on disputed issues." *Truesdell v. State*, 129 Nev. 194, 203, 304 P.3d 396, 402 (2013). Improper comments on a defendant's post-arrest silence will be harmless beyond a reasonable doubt if it was a passing reference or there is overwhelming evidence of guilt. *Morris*, 112 Nev. at 264, 913 P.2d at 1267-68.

During rebuttal argument, the State inventoried the testimony and evidence that indicated Cooper's guilt for the crimes. The State noted that it had presented a substantial amount of circumstantial evidence indicating that Cooper was the person that had shot the victim and then stated, "I mean, short of a - short of him confessing, I don't know what else you could have." The challenged statement was an argument concerning the nature and quality of the evidence indicating Cooper's guilt and was not a comment on Cooper's decision to remain silent. And to the extent it could have been a comment on Cooper's decision, it was, at most, a passing reference to Cooper's post-arrest silence. Accordingly, Cooper did not demonstrate that his counsel's performance fell below an objective standard of reasonableness due to any failure to object to the challenged comment.

In addition, this court concluded on direct appeal that there was overwhelming evidence of Cooper's guilt presented at trial. *Cooper v. State*, No. 7355 8-COA, 2018 WL 3603040 (Nev. Ct. App. July 20, 2018) (Order of Affirmance). Thus, even assuming the challenged statement was improper, it was harmless. Accordingly, Cooper failed to demonstrate a reasonable probability of a different outcome had counsel objected to the challenged statement. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 30-32 at 5-7.)

In closing argument, the prosecutor posed the common-sense question: why would the victim lie about the shooting? The prosecutor did not personally assure that the victim's testimony was accurate, nor did he intimate that evidence outside of the trial showed that the victim was credible. So the prosecutor did not engage in impermissible vouching. The prosecutor reviewed the eyewitness, video, and circumstantial evidence

before questioning what else the State could have presented short of a confession. The Nevada Court of Appeals reasonably interpreted that as an argument assessing the "nature and quality" of the evidence of Cooper's guilt and not as a comment on Cooper's decision to remain silent. To the extent that it might be an improper statement on Cooper's silence, the prosecutor's argument did not deprive Cooper of a fair trial. Cooper has not shown that trial counsel was deficient by failing to object to the prosecutor's comments, nor has he shown a reasonable probability of a different result if counsel had objected. The Nevada Court of Appeals reasonably applied *Strickland* and was not based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). The Court, therefore, denies habeas relief on grounds 3 and 7.

### D.      Ground 4—Ineffective Assistance of Appellate Counsel

Here Cooper alleges only: "Appellate counsel, who was also trial counsel, failed to include in the appeal errors that he himself had in fact objected to. Specifically, appellate counsel failed to raise as error a separate instance of prosecutorial misconduct and the district court's unconstitutional abridgement of Cooper's defense." (ECF No. 13 at 28.)

The Court notes that appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Experienced appellate counsel recognize that it is important to focus on the strongest issue or a few key issues. *Id*. at 751-52. A petitioner must demonstrate that but for counsel's errors, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Most importantly here, however, Cooper does not describe the alleged instances of prosecutorial misconduct at all or explain how the court allegedly interfered with his defense. There are no specific allegations whatsoever. Ground 4 is, therefore, denied as meritless.

### E.      Ground 5—The Cumulative Effect of Ineffective Counsel

Cooper argues that the cumulative effect of trial counsel's errors prejudiced him. (ECF No. 13 at 28.) The Ninth Circuit has held that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally

unfair. *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007), citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973). The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal. *Chambers*, 410 U.S. at 290 n.3. The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," and thereby had a "substantial and injurious effect or influence" on the jury's verdict. *Parle*, 505 F.3d at 927 (citing *Chambers*, 410 U.S. at 294); *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993).

The Nevada Court of Appeals disagreed:

> Cooper next argued he was entitled to relief due to the cumulative effect of counsels' errors. Even assuming any such errors may be cumulated, *see McConnell v. State*, 125 Nev. 243, 259 n.17, 212 P.3d 307, 318 n.17 (2009) (noting the Nevada Supreme Court has never adopted a standard to evaluate such claims in postconviction proceedings), Cooper failed to demonstrate multiple errors to cumulate. Therefore, we conclude the district court did not err by denying this claim. *See Burnside v. State*, 131 Nev. 371, 407, 352 P.3d 627, 651 (2015).

(ECF No. 30-32 at 8.)

The Court concludes that the state appellate court reasonably rejected Cooper's claims of ineffective assistance of counsel. So there is no error to cumulate. Accordingly, habeas relief is denied on ground 5.

The Petition, therefore, is denied in its entirety.

## VI.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to the Cooper. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a Certificate of Appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to

claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*. at 478.

Having reviewed its determinations and rulings in adjudicating Cooper's Petition, the Court finds that none of those rulings meets the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of Cooper's Petition.

**VII.    CONCLUSION**

It is therefore ordered that the Amended Petition (ECF No. 13) is denied.

It is further ordered that a Certificate of Appealability will not issue.

The Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED THIS 22nd Day of May 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE